IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cr-165 |
| | ) | Hon. Michael S. Nachmanoff |
| HATCHET M. SPEED | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT

Comes now, the defendant, Hatchet M. Speed, by counsel Courtney Dixon, Assistant Federal Public Defender, and Brooke Rupert, Assistant Federal Public Defender, and files this reply in support of his motion to dismiss the indictment as void for vagueness. The government's effort to dispel the ambiguity in the term "silencer" as set forth in 18 U.S.C. § 921(a)(25), as employed via 26 U.S.C. § 5861(d), and as applied against Mr. Speed further demonstrates such ambiguity amounting to a violation of the Due Process Clause of the Fifth Amendment. Accordingly, the indictment should be dismissed.

1. **The statute does not provide reasonably clear standards for ordinary people to understand what conduct is prohibited**

Section 5861(d) is unconstitutionally vague as applied to Mr. Speed because neither citizens nor law enforcement have fair warning of the application of the statute to solvent traps like those Mr. Speed purchased. The government altogether fails to refute this argument.

First, as Mr. Speed argues in the Motion, neither § 921(a)(25) nor § 5861(d) list a single essential or easily identifiable design, physical feature or characteristic that a device must have to make it subject to registration requirements as a silencer. *See Beckles v. United States*, 580 U.S.

256, 262 (2017) (clarifying that due process "requires that a penal statute define the criminal offense with sufficient definiteness"). The government does not, nor cannot deny this deficiency, and instead merely suggests that "perfect clarity" is not required. (Resp. at 16). Mr. Speed, however, never argued that due process requires "perfect clarity" — only that the statute should comport with the minimum safeguards afforded under the Due Process Clause, as made clear by the Supreme Court, that it sufficiently define the criminal offense such that ordinary people can understand what conduct is prohibited. *See id.* Building upon its strawman "perfect clarity" standard, the government relies on *United States v. Williams*, 364 F.3d 556, 560 (4th Cir. 2004) and *United States v. Morningstar*, 456 F.2d 278, 281 (4th Cir. 1972) as examples where the Fourth Circuit "rejected vagueness challenges to other firearm definitions that do not go *into that level of granularity*." (Resp. at 16) (emphasis added). But both *Williams* and *Morningstar* concerned definitions that *did* include identifiable physical features and thus they fail to support the government's misplaced contention. *See Williams*, 364 F.3d at 558 (where the definition of "machine gun" included the "frame or receiver" of any such weapon); *Morningstar*, 456 F.2d at 280 (listing identifying characteristics of a "destructive device"). Not only is the government's argument meritless, but its own cases further distinguish the vague language comprising § 921(a)(25) as compared to other definitions.

Second, as argued in the original Motion, the Supreme Court does not accept "boundless readings" of statutory terms where such reading would lead to "deeply serious consequences," including, for example, criminalizing plastic bottles, potatoes, pillows, books, banners, flags, clothing, tools, electronic equipment, etc." (Mot. at 8) (citing *See Bond v. United States*, 572 U.S. 844, 860 (2014)). The government avoids addressing the plain language of *Bond*, and instead attempts to circumvent Mr. Speed's vagueness challenge at the outset by alleging an improper

2

"facial challenge."[1] But this procedural tactic fails. The government presupposes that the statute "clearly prohibit[ed Mr. Speed's] conduct," (Resp. at 16-17), and next uses that incorrect assumption to prevent Mr. Speed from challenging the statute and from providing illustrative examples of such "deeply serious consequences." *Bond*, 572 U.S. at 860. But as discussed in the original Motion and below, the statute did not clearly prohibit Mr. Speed's conduct. As such, the court should dismiss the government's argument that Mr. Speed is foreclosed from providing hypothetical examples to illustrate the statute's vagueness.

    2.    **Mr. Speed's vagueness challenge survives because the statute does not clearly prohibit his conduct.**

The statute is entirely unclear as to whether Mr. Speed's conduct is prohibited. The government's response fails to demonstrate otherwise. The statutory scheme's subjective and ambiguous *mens rea* requirements exemplify its vagueness as applied to Mr. Speed. Although a scienter requirement *may* alleviate vagueness concerns in certain instances, here it exacerbates them. Unlike the cases relied on by the government, the scienter requirement here is scattered among multiple statutes and is itself the subject of vagueness concerns. While the government focuses on § 5861(d)'s "knowledge" requirement in a vacuum, it fails to adequately consider its application to the more ambiguous "purpose" and "intention" requirements in the definitional section.

As written, § 5861(d) requires that Mr. Speed know of an object's purpose and be able to subjectively determine if and when an object's purpose changes such that it requires registration.

---

[1] The government, (at 17-18), spills much ink summarizing *United States v. Schrum*, 346 F. Supp. 537 (E.D. Va. 1972), to which the Motion briefly referred to illustrate the Fourth Circuit's long-held view cautioning against overly broad readings of criminal statutes. Although the government goes to great lengths to distinguish factual differences between *Schrum* and the case at hand—Mr. Speed reiterates the narrow proposition for which it is cited.

But as discussed at length in Mr. Speed's Motion, the statute is unclear as to how extensive the "purpose" *mens rea* is. (Mot. at 11). Nor is it clear if Mr. Speed as the possessor is the authority on what a solvent trap's purpose is, if a solvent trap can have only one purpose, or if a solvent trap can be used in a way different from its intended purpose. Indeed, the statute's language incorporates other descriptors outside the control of Mr. Speed, § 921(a)(25). (e.g. the object's "design" and "redesign" or what the device is "for."). Nowhere does the statute explicate that Mr. Speed is the authority on such components as the mere purchaser. He did not design the solvent traps, nor did he dictate their purpose.

Furthermore, the government does not show that Mr. Speed actually planned to convert his solvent traps into silencers at any definitive point in the future. Indeed, the three solvent traps in Mr. Speed's possession were kept in their original packaging. Regardless of whether Mr. Speed knew generally that the solvent traps could be modified to create silencers, Mr. Speed did not own the drill press required to convert them, nor did he even know the proper drill bit size required. Moreover, the government also fails to show that Mr. Speed intended not to follow the proper registration procedure if he ever chose to convert the solvent traps into silencers.

3. **The ATF Regulations Did Not Give Mr. Speed Fair Notice**

Mr. Speed maintains that the unpublished internal ATF guidance did not give him fair notice of what constituted a silencer for purposes of enforcement. Because the government neglects to respond to this fair notice argument, Mr. Speed rests on the arguments in his opening Motion (Mot. at 11-13).

In lieu of a response, the government quibbles with the characterization of the ATF's internal guidance as inconsistent. Indeed, although the ATF Technical Bulletin 17-02 explains that "flashlight solvent traps'" that have "index markings" or a "hole drilled in the forward end-cap

*could* be classified as a firearm silence," the ATF Technical Bulletin 20-01 states that such solvent traps "*are* classified as a 'firearm silencer'" under the statute. "Could be" and "are" are materially different, especially when considered in a statute where the purpose of an object at a given time determines whether it falls under the purview of § 921(a)(25). The ATF guidance further highlights this material difference, as Technical Bulletin 17-02 further explains that solvent traps are "unregulated *until* a possessor assembles, accumulates, or otherwise demonstrates these articles are to be used for making a firearm silencer." For the government to suggest that these are the same is, at best, a crucial misunderstanding of the statutory structure. If the "purpose" of the object is the determinative factor for whether it falls under § 921(a)(25), the ATF's unpublished, ever-shifting guidance regarding when an object's purpose changes, as well as its selective notification of that guidance to individuals who purchased solvent traps, cannot constitute fair notice as the Due Process Clause requires.

    **4.**     **The Rule of Lenity requires any ambiguity be construed in Mr. Speed's favor**

Finally, the rule of lenity dictates that any ambiguity created by § 921(a)(25) and § 5861(d) as applied against Mr. Speed must be decided in Mr. Speed's favor. The rule of lenity requires courts to construe ambiguous criminal statutes against the government and in favor of the defendant." *United States v. Hunt*, 56 Fed. Appx. 210, 211 (4th Cir. 2003); *see also United States v. Santos*, 553 U.S. 507 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them"); *United States v. Hall*, 972 F.2d 67, 69 (4th Cir. 1992) ("Under the rule of lenity any criminal statute . . . must be construed in favor of the accused and against the government if it is ambiguous.").

Notably, the government fails to refute Mr. Speed's argument concerning the rule of lenity, resorting instead to a conclusory "as discussed above" line devoid of any internal citations tacked

at the end of its argument. (Resp. at 23). In declining to respond with any substance to Mr. Speed's lenity argument, the government conflates the vagueness concerns with the ambiguity concerns. *See United States v. Lanier*, 520 U.S. 259, 266 (1997) (distinguishing the rule of lenity and the void-for-vagueness doctrine). And although both legal doctrines are rooted in due process concerns and are both relevant to Mr. Speed's argument, the government fails to recognize the difference and treats them as one in the same. As such, Mr. Speed rests on the merits of his Rule of Lenity argument as argued in the original Motion.

## CONCLUSION

As in any vagueness challenge, the issue here is one of fair notice: does the statute provide constitutionally acceptable notice such that a person of ordinary intelligence would know what constitutes a "silencer" that must be registered with the National Firearms Registration and Transfer Record. Given the uncertainty and ambiguity inherent in the statute's definitions, the answer is no. As the Supreme Court recognized in *Kolender v. Lawson*, "Although due process does not require impossible standards of clarity, this is not a case where further precision of statutory language is either impossible or impracticable." 461 U.S. 352, 361 (1982). Because the statute provides no such clarity, the indictment should be dismissed.

Respectfully submitted,

                                            **HATCHET SPEED**

                                            by counsel:
                                            Geremy Kamens,
                                            Federal Public Defender

By: _____/s/_____
Courtney Dixon, *Pro hac vice*
DC Bar No. 1766415
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800 (telephone)
(703) 600-0880 (facsimile)
Courtney_Dixon@fd.org

_____/s/_____
Brooke Rupert
VA Bar No. 79729
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800 (telephone)
(703) 600-0880 (facsimile)
Brooke_Rupert@fd.org

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 8th day of November 2022, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

  Thomas W. Traxler
  Amanda Lowe

  Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.

                /s/
               Courtney S. Dixon
             Assistant Federal Public Defender