IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cr-165 |
| | ) | Hon. Michael S. Nachmanoff |
| HATCHET M. SPEED | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION OF GOVERNMENT'S
<u>MOTION IN LIMINE TO ADMIT</u>**

As discussed in the Government's Motion in Limine to Admit (ECF No. 84, herein the "Motion"), the parties have been unsuccessful in reaching an agreement concerning their respective proposed redactions to Government Exhibits 3A and 3E. Mr. Speed thus asks this Court to allow for the redactions in Government's Motion Exhibit B ("Defense's Proposed Redactions") for the following reasons.[1]

1. **The Government's proposed redactions leave in language of religious violence that is irrelevant to what Government must prove under the National Firearms Act.**

The Government's Proposed Redactions leave Exhibit 3E ripe with inflammatory language concerning religious violence and conspiracy theories that are not relevant to what it must prove under 26 U.S.C. § 5861(d). As it has noted, the Government only needs to show:

---

[1] Mr. Speed maintains his position outlined in Defendant's Objections to Government's Proposed Exhibits (ECF No. 53) and elsewhere that Government Exhibits 3A and 3E should be excluded in their entirety. Furthermore, Mr. Speed does not concede his earlier argument that the Supreme Court's recent ruling in *Ruan v. United States*, requires the Government to establish that Mr. Speed had knowledge that he was in violation of the law. *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022) (explaining that statutes that "contain no mens rea provision" should be read to require "that mens rea which is necessary to separate wrongful conduct from 'otherwise innocent conduct'"). Without conceding these arguments, Mr. Speed offers the following response to the Government's Motion pursuant to the Court's December 7, 2022 Order (ECF No. 83).

(1) Speed knowingly possessed the firearm described in the indictment; (2) the firearm was a silencer as defined in section 921 of Title 18, United States Code; (3) Speed knew of the characteristics of the firearm as described in the indictment, that is, Speed knew the firearm had the characteristics of a silencer as defined in section 921 of Title 18 of the United States Code; and (4) the firearm was not registered to Speed in the National Firearms Registration and Transfer Record."

(ECF No. 58 at 1-2, Gov's Resp. to Def's Objs.)

Defense's Proposed Redactions retain the relevant portions necessary for the Government to make its case as to those four elements. Yet the Government wishes to include extraneous portions of the transcript that contain provocative language certain to inflame the passions of the jury while lacking any relation to the elements of the crime alleged. Such portions include, but are not limited to, the following:

- "I'm tired of my whole life . . . Here's the thing, like, I-I saw this years ago and I never— I never saw it in context until recently, but people always talked about how, "Oh, jihadists are so dumb. They don't realize that no matter what they do, like, if you—if they kill themselves and take out people, like, what does that . . ." Like, actually, it's a very, very smart way of doing it because there are way more Muslims than there are Christians, so if each Muslim takes out three Christians, you could completely wipe out Christianity from the earth, and most Muslims would still be around then." (Gov's Mot. Ex. A at 3).

- Only three percent would take action. Now, what if, uh, three percent takes action here, it's us three percent against two percent.[2] (Gov's Mot. Ex. A at 4).

- So if we took out—if we take out even one, we've done more than we need to take out. Like, if—if that were to happen, we could just literally take out just one person, one to one, and we're immediately arrested or killed or jailed or whatever-- . . . . --we would manage to leave one percent of true fighters. We'd wipe out the opposition and leave the entire country free to finally live through that. (Gov's Mot. Ex. A at 4-5).

The Court should not permit the Government to introduce these statements because they are not relevant to any of the four elements it must prove under 26 U.S.C. § 5861(d). Under Federal

---

[2] "Two percent" refers to Mr. Speed's earlier comment that "two percent of this population is Jewish." (Gov's Mot. Ex. A at 3). Although the Government proposes that the initial "two percent" comment be redacted, it does not redact the subsequent mentions of "two percent" in Exhibit A of the Motion. For the sake of continuity and clarity, all discussions of the "two percent" should be redacted.

Rule of Evidence 402, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. "For evidence to be relevant, it must be sufficiently related to the charged offense." *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012) (citation and internal quotation marks omitted). "[T]he burden is on the introducing party to establish relevancy," *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990).

The Government claims that Mr. Speed's statements about religious violence "are necessary and relevant to proving . . . the defendant's mental state" in possessing the solvent traps. (Motion at 2). Not only does this discussion lack any concrete connection to the solvent traps, but this reasoning contravenes the Government's previous argument against the relevance of Mr. Speed's state of mind. Indeed, while Mr. Speed has argued for a broader reading of the statute that incorporated his intent, the Government has consistently responded that that argument "is based on a misinterpretation of the statute" (*id.* at 2), that "[t]his interpretation of the statute is incorrect," (ECF No. 57 at 2) and that "[r]equiring proof of the subjective intent of the defendant, irrespective of the design of the device, would thwart [the NFA's] purpose" (*id*. at 4). The Government repeatedly objected to Mr. Speed's efforts to introduce evidence regarding his mental state, (*e.g.* ECF Nos. 49, 50, 57, 58, 59) urging the Court in no uncertain language that "the statute does not require the government to prove such subjective intent" (ECF No. 58 at 2). And the Government has been successful in its efforts to prevent evidence of Mr. Speed's subjective intent and purpose from coming before the jury.[3] The Court should reject this double standard and allow only the

---

[3] *See* generally, ECF No. 83, Order: (1) sustaining the Government's objections to Mr. Speed's jury instruction regarding willfulness (ECF No. 40); (2) overruling Mr. Speed's objections to the Government's proposed jury instructions surrounding "Motive (ECF No. 54); (3) granting the Government's motion in limine (ECF No. 37) precluding Mr. Speed from presenting testimony or evidence regarding his understanding of the operability of or time to register the devices at issue; (4) sustaining the Government's objections (ECF No. 48) to Mr. Speed's proposed exhibits (ECF No. 39) as to Defense Exhibits 1, 1A-1G, 2 9, 10, 11, 12, and 13.

relevant portions of Exhibits 3A and 3E the are necessary to show the elements of the crime alleged, as highlighted in Defense's Proposed Redactions.

Alternatively, even if the Court finds statements of religious violence probative of a 26 U.S.C. § 5861(d) violation, it should nonetheless allow Defense's Proposed Redactions because the Government's Proposed Redactions are extremely prejudicial relative to any probative value. Under Rule 403, "relevant[] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The Fourth Circuit has recognized that unfair prejudice could be caused by an appeal to the jury's emotions. *See United States v. Mohr*, 318 F.3d 613, 619–20 (4th Cir. 2003). The risk of prejudice is especially high when it creates a risk "that jurors will convict a defendant based on the jurors' disdain or their belief that the defendant's prior bad acts make guilt more likely." *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993). Inflammatory discussions of religious violence would weigh on the jury, particularly during the holiday season and particularly during a time where religious bigotry and especially anti-Jewish sentiments have been prevalent in the local and national news.

2. **The Government's proposed redactions leave in a discussion about kidnapping, which is irrelevant to what Government must prove under the National Firearms Act.**

The Government also seeks to include a lengthy discussion about kidnapping that lacks any relevance to the four elements the Government must prove under 26 U.S.C. § 5861(d). After the UCE brings up the idea of kidnapping, (Gov's Mot. Ex. A at 6), Mr. Speed makes several statements on the subject. These statements, which the Government argues are relevant, include:

- What I would love to see is you take somebody out, and they simply disappear. Nobody knows what happened to them . . . That means we can't report on it, the media doesn't know how to spin it. (Gov's Mot. Ex. A at 6).

- We need to foster distrust within the opposite side, just like they do for us. (Gov's Mot. Ex. A at 6).

- Yeah. If—if you leave nothing behind, they never find the body. (Gov's Mot. Ex. A at 7).

Nothing in this contested portion, (Gov's Mot. Ex. A at 6-7), is probative to the crime alleged. This discussion does not shed light on whether Mr. Speed knowingly possessed the solvent traps, whether the solvent traps constituted silencers under § 921(a)(25), whether Mr. Speed had knowledge of the features bringing the solvent traps under § 921(a)(25), or whether Mr. Speed registered the solvent traps National Firearms Registration and Transfer Record. It is wholly irrelevant, and the Court should prohibit its admission under Rule 402.

The Government responds that the evidence is relevant "because kidnapping is the type of clandestine action that could particularly benefit from the use of a silencer." (Motion at 2). But the Government's unsupported claim that kidnapping "*could* particularly benefit from the use of a silencer" does not make any element of 26 U.S.C. § 5861(d) more or less likely. Such conjecture highlights just how far removed this kidnapping discussion is from the four elements the Government must prove under 26 U.S.C. § 5861(d). Moreover, it would almost certainly introduce "unfair prejudice, confus[ion of] the issues, [and would] mislead[] the jury." Fed. R. Evid. 403. The Court should reject it as such, and instead permit Defense's Proposed Redactions, which retain the portions of the conversation relevant to the crime alleged and exclude the extraneous and prejudicial excerpts discussed above.

# CONCLUSION

For the foregoing reasons, Mr. Speed requests that the Court allow the introduction of the recording and transcript as reflected in Defense's Proposed Redactions.

Respectfully submitted on December 8, 2022.

        **HATCHET SPEED**
        by counsel:

        Geremy C. Kamens
        Federal Public Defender for the
        Eastern District of Virginia


        by: /s/_____
        Courtney Dixon
        *Pro hac vice*
        DC Bar No. 1766415
        Assistant Federal Public Defender
        1650 King Street, Suite 500
        Alexandria, Virginia 22314
        Telephone: (703) 600-0800
        Facsimile: (703) 600-0880
        courtney_dixon@fd.org

        Brooke Rupert
        VA Bar No. 79729
        Assistant Federal Public Defender
        1650 King Street, Suite 500
        Alexandria, Virginia 22314
        Telephone: (703) 600-0800
        Facsimile: (703) 600-0880
        brooke_rupert@fd.org

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the 8th day of December 2022, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Thomas W. Traxler
    Amanda Lowe

       Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.

                                                   /s/
                                          Brooke S. Rupert
                                          Assistant Federal Public Defender