IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:22-CR-165 |
| | ) | |
| v. | ) | The Honorable Michael S. Nachmanoff |
| | ) | |
| HATCHET M. SPEED, | ) | Trial: January 17, 2023 |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION IN LIMINE**
**TO PRECLUDE IMPROPER CLOSING ARGUMENT**

In advance of the retrial of the defendant, Hatchet Speed, the government requests that the Court preclude defense counsel from making improper closing arguments. During the first trial, the Court found that counsel made an improper argument by advocating for the jury to make its own independent determination of the applicable law. Counsel's improper argument required the Court to recess during closing arguments and then give a curative instruction before the government's rebuttal.

As demonstrated below, counsel's improper argument was not limited to that one instance. In addition to it, counsel made arguments that improperly sought to put the jury in the defendant's shoes (i.e., "golden rule" appeals), asserted facts not in evidence, attempted to define and mischaracterized the "reasonable doubt" standard, and advocated for jury nullification. In each of these respects, counsel violated well-established standards for proper closing argument. Such a win-at-all-costs approach to closing argument deprives the public of a fair trial. To prevent a miscarriage of justice in the next trial, the government requests that the Court order defense counsel not to make such improper arguments again.

**DISCUSSION**

The Court has "great latitude in controlling the duration and limiting the scope of closing summations" to ensure that they do "not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial." *Herring v. New York*, 422 U.S. 853, 862 (1975). It is well settled that "counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds." *United States v. Young*, 470 U.S. 1, 8 (1985). "Just as the conduct of prosecutors is circumscribed, '[t]he interests of society in the preservation of courtroom control by the judge are no more to be frustrated through unchecked improprieties by defenders.'" *Id.* (quoting *Sacher v. United States*, 343 U.S. 1, 8 (1952)). Unlike when an improper argument is used to obtain a conviction, the government cannot appeal an acquittal or re-try a defendant who has been acquitted through the use of improper argument by the defense. *See id.* at 9 n.6; *In re United States*, 945 F.3d 616, 624 (2d Cir. 2019).

**A. Counsel Should Be Precluded from Making Golden-Rule Arguments.**

When used by the defense, a "golden rule" argument involves inviting the jury to put itself in the defendant's position. *See United States v. Chapple*, 801 F. App'x 379, 381 (6th Cir. 2020); *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007). Such an argument "is universally recognized as improper because it encourages the jury to depart from [its] neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Roman*, 492 F.3d at 806 (quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989)).

At the first trial, defense counsel made multiple golden-rule appeals in her closing argument. For example, when counsel was addressing the evidence of Speed's panic buying of firearms in early 2021, counsel stated the following:

> [The government] also, yesterday, wasted a lot of time talking about how much money Mr. Speed spent on guns and gun accessories. But guess what? That is none of the government's business. How Mr. Speed, *how all of you, how every*

> *single person in this courtroom decides to spend their money is no one's business but their own.*

Ex. A, at 85. This argument urged the jurors to put themselves in Speed's shoes by suggesting that they should be concerned about law enforcement investigating how they spent their money, as occurred in the investigation of Speed.

Counsel made a similar argument when discussing the types of items that can be classified as a silencer. During that argument, counsel stated the following:

> And just as an aside, remember, the ATF will call anything a silencer. You heard today that the ATF has classified fuel filters, PVC pipes, even tiki torches as silencers; and *that means that every time a citizen of this country buys an item and the ATF later decides that they want to regulate it, they make another arbitrary decision, then more innocent people are going to be sitting in the same chair as Mr. Speed.*

*Id.* at 91. Counsel's argument invited the jurors, as citizens of this country, to imagine that they could be "arbitrarily" prosecuted for possessing common household items such as fuel filters, PVC pipes, and tiki torches.

These arguments were highly improper. The takeaway from counsel's argument was that the jurors should fear that the government was going to delve into their bank records and prosecute them for possessing common household items that could be used to fabricate or assemble a silencer. Such an argument asked the jury to depart from its position of neutrality and "put itself in the defendant's position," a quintessentially improper golden-rule appeal. *Roman*, 492 F.3d at 806.

To make matters worse, the argument was misleading. As counsel knows well, the government cannot prosecute people simply for possessing common household items that are capable of being used as or to make a silencer. Rather, the government must prove that an item meets the statutory definition of a silencer (which requires proof that the item was designed and/or intended to serve as or be used to fabricate or assemble a silencer) and that the defendant

3

knew of the characteristics that brought the item within the statutory definition of a silencer. Counsel should not be permitted to make a similar argument in the next trial.

**B.      Counsel Should Be Precluded from Arguing Facts Not in Evidence.**

It is a fundamental precept that "[c]losing argument is limited to the facts in evidence." *United States v. Tejada*, 445 F. App'x 719, 722 (4th Cir. 2011). Closing argument "is not the time to introduce facts not already admitted in evidence." *Id.* The government offers just a few examples to demonstrate how counsel violated this rule in her previous closing argument.

*First*, for example, counsel offered facts not in evidence when describing her cross-examination of the government's expert. Specifically, counsel asserted the following:

> Now, you heard me ask her multiple times and in multiple ways what would happen if she had fired a gun, attaching the solvent trap to a weapon in the design that it was in when she received it, and *she basically refused to answer that question, so I will do that for you: It probably would have exploded*.

Ex. A, at 86 (emphasis added).

As counsel's argument even recognized, the government's expert did not provide testimony to support the assertion that the device would have exploded. Counsel asked the expert, "If you had fired a weapon with that solvent trap attached, with no drilled hole through the end cap, could it possibly have essentially exploded inside of the device?" *Id.* at 4. The expert answered, "What would happen if you fired through an end cap that didn't have the hole completed, the round would either possibly go through or it would possibly dent and land and be retained inside the device." *Id.* Unsatisfied with the expert's response, counsel asserted the fact in closing argument anyway. The assertion was especially concerning because such an opinion would have required expert testimony.

As another example, counsel stated the following when describing Speed's purchase of the Hawk Innovative Tech devices:

> And if he was so concerned about having the silencers so promptly, then why would they remain untouched and unmodified for 15 months? I'll tell you why. He was not actually intending to change them. *He probably opened them up, looked at them, and was, like, This is going to take too much, and he put them back, and nothing ever happened.*

*Id.* at 92 (emphasis added). There was no evidence concerning whether Speed opened the packages or what he thought in doing so. Speed did not testify to these facts, and no other witness provided a basis for them. Instead, counsel improperly asserted facts on behalf of Speed, without evidence to support them.

Counsel also falsely implied that the government was allowing people to purchase the Hawk Innovative Tech devices online because they were not illegal. In particular, counsel stated the following:

> On March 17, 2021, Mr. Speed sat at his computer, he logged onto the Internet, he went to a website, and he ordered three solvent traps in the same way that we go on Amazon and order food or clothes or other household items. Why was he able to do that? Because it wasn't illegal. As you heard in the testimony, these solvent traps could be found in stores, online. They were easy and accessible to anyone because they are not illegal.

*Id.* at 83. But, as counsel knows, the ATF has seized Hawk Innovative Tech's website and is criminally investigating Hawk Innovative Tech. *See* Gov't's Mot. in Limine 22 & Ex. B (Nov. 25, 2022) (Dkt. No. 37). While a defendant has a "constitutional right to present a defense," that does not "include the right to affirmatively misrepresent or falsely imply" facts. *United States v. Lake*, 611 F. App'x 390, 393 (9th Cir. 2015). The Court should preclude the defense from implying that the government allowed people to purchase these devices because they were legal.

### C. Counsel Should Be Precluded from Arguing Incorrect Statements of Law and Encouraging the Jury to Decide the Applicable Law Independently.

When arguing the law in closing arguments, counsel is confined to the legal principles that the Court has charged to the jury. *See United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983). Counsel cannot suggest to the jury that it has the authority to independently determine

the applicable law.  *See United States v. Collins*, 577 F. App'x 180, 184 (4th Cir. 2014) (recognizing that Supreme Court precedent "foreclose[s] the argument that the jury may independently determine the applicable law" (citing *Sparf v. United States*, 156 U.S. 51 (1895))). "*What* the government must prove is a question of law for the court; *whether* the government has adequately proved what it needs to is a question of fact for the jury." *United States v. Sanchez*, 604 F.3d 356, 360 (7th Cir. 2010).  The Court, moreover, has discretion to prevent counsel "from arguing incorrect statements of law." *United States v. Doe*, 705 F.3d 1134, 1149 (9th Cir. 2013).

Counsel crossed this line in arguing the legal requirements for proving that the Hawk Innovative Tech devices were silencers.  In its instructions, the Court read the statutory definition of a silencer to the jury.  *See* Ex. A, at 53.  The Court further instructed the jury that "[a] device does not need to be operable to constitute a silencer, as defined in Section 921 of Title 18, United States Code, as long as the purpose of the device is to silence, muffle, or diminish the report of a portable firearm." *Id.*  The Court did not otherwise instruct the jury on how to determine the purpose of a device or intended use of a combination of parts or single part.  *See id.*

Without notice, counsel attempted to fill that void in her closing argument to the jury.  In the course of her argument, counsel argued that when analyzing whose intent controls under the statute, the jury could interpret the law to require proof of the manufacturer's intent for the devices to be used as silencers.  Specifically, she argued as follows:

> But if you think, I'm not sure, maybe this is designed like a silencer, then the government still has to prove to you that it was intended to be used as a silencer. But do you know what is missing from the statute, the statute that you-all have to look at and decide the facts of this case? Is whose intent matters. Does it have to be the intent of the manufacturer to be used as a silencer or the purchaser?  It's not clear.  What is clear from Ms. Eisenbise's testimony is that part of what they have to consider in classifying firearms is the manufacturer's intent, and I would argue to you that the manufacturer's intent is all that you need.  We know what the manufacturer's intent was, but because the government doesn't like what it says, they're saying that it's Mr. Speed's intent, that's what governs.

6

*Id.* at 88-89. In advocating this interpretation of the statute, counsel argued that "Mr. Speed's intent does not matter." *Id.* at 90. At the end of her argument, counsel stated, "And if as you are all deliberating, you go over that statute and you aren't sure whose intent matters in this case, whether it's the manufacturer's or the purchaser's, then, members of the jury, that is a reason to doubt." *Id.* at 96.

As the Court recognized at trial, this was an improper argument. Ex. A, at 99, 102, 111. In effect, counsel invited the jury to independently interpret § 921(a)(25) to determine whose intent controls—the manufacturer's intent or the defendant's intent—when the Court had not given an instruction on the issue. If the defense wanted to argue that the manufacturer's intent controlled, it had an opportunity to seek a jury instruction to that effect prior to trial. But it did not do so. On the contrary, the defense previously took the position that the statute required proof of Speed's intent—not the manufacturer's intent. *See* Def.'s Resp. in Opp'n to the Gov't's Mot. in Limine to Preclude Admission of Evidence, at 3-6 (Nov. 30, 2022) (Dkt. No. 52); Def.'s Mot. to Dismiss Indictment 14 (Oct. 19, 2022) (Dkt. No. 23). Under these circumstances, it was improper for defense counsel to invite the jury to make an independent determination of the proper construction of the statute during closing arguments.

Counsel's argument, moreover, incorrectly stated the law by suggesting that the manufacturer's subjective intent controlled under § 921(a)(25). As the government has previously explained, when evaluating whether the purpose of a device is to silence, muffle, or diminish the report of a portable firearm under the first clause of § 921(a)(25), the focus is on the design features of the evidence. *See* Gov't's Reply in Support of Its Mot. in Limine 2-5 (Dec. 5, 2022) (Dkt. No. 57). When evaluating whether a combination of parts or single part is intended for use in fabricating or assembling a firearm silencer under the second and third clauses of

7

§ 921(a)(25), the focus is on the defendant's intent. *See id.* at 6-8. As noted above, the defense's pretrial position on the proper construction of the statute was that the "intent" language in § 921(a)(25) focused on Speed's intent. Counsel should be precluded from advancing incorrect interpretations of the law to the jury.

> **D.     Counsel Should Be Precluded from Attempting to Define and Mischaracterizing "Reasonable Doubt" for the Jury.**

It is well established that "a district court should not attempt to define the term 'reasonable doubt' in a jury instruction absent a specific request for such a definition from the jury." *United States v. Oriakhi*, 57 F.3d 1290, 1300 (4th Cir. 1995). As the Fourth Circuit has cautioned, "the words 'beyond a reasonable doubt' have the meaning generally understood for them and . . . further efforts to restate their meaning with different words tend either to alter or obfuscate that meaning." *Id.* Just as district courts should not attempt to define "reasonable doubt," counsel should not attempt to fill that void in closing argument to the jury. *See United States v. Crockett*, 813 F.2d 1310, 1317 (4th Cir. 1987) (affirming district court preventing counsel "from presenting a definition of 'reasonable doubt' to the jury in closing argument" because "such definitions are usually more confusing than helpful").

Yet that is exactly what counsel attempted to do in her closing argument. After noting that the government has the burden to prove guilt beyond a reasonable doubt, counsel asked, "But what does that mean?" Ex. A, at 95. Counsel then compared the reasonable doubt standard to lesser burdens of proof used in civil cases. *See id.* After doing so, counsel stated, "And that means that at the end of this case, if you have any doubt in your mind, a doubt that you have a reason for, a doubt that gives you pause, then that means that the government has not met their burden." *Id.* Counsel then provided a number of examples of arguments that she claimed could give the jury a "reason to doubt." *Id.* at 95-96.

8

Counsel's argument was improper for two reasons. First, counsel improperly attempted to define the reasonable doubt standard. Second, counsel mischaracterized the applicable standard by suggesting to the jury that it simply required any reason to doubt, regardless of whether that reason was reasonable. Counsel's argument exemplifies why it is dangerous to attempt to define the reasonable doubt standard. Counsel should be precluded from making a similar argument in the next trial.

**E.      Counsel Should Be Precluded from Encouraging Jury Nullification.**

"Although a jury is entitled to acquit on any ground, a defendant is not entitled to inform the jury that it can acquit him on grounds other than the facts in evidence, i.e. a jury has the power of nullification but defense counsel is not entitled to urge the jury to exercise this power." *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996). And "district courts have a duty to forestall or prevent such conduct" encouraging jury nullification. *In re United States*, 945 F.3d 616, 627 (2d Cir. 2019). This includes the discretion to preclude argument of facts that have "low probative value" and are a "self-evident invitation to jury nullification." *United States v. Peterson*, 945 F.3d 144, 157 (4th Cir. 2019); *see also United States v. Summers*, 630 F. App'x 189, 192 (4th Cir. 2015) (holding that the "district court permissibly found that an argument that this case involved a family matter that should have been handled in a civil suit invited impermissible jury nullification").

Throughout her closing argument, counsel made an appeal to jury nullification by attempting to shift the jury's focus to whether the ATF "arbitrarily" decided what is and is not a silencer. She argued, for example, "if you go back in the jury room and you're questioning how the ATF can just arbitrarily regulate something that is purchased legally online and in stores, that is reasonable doubt." Ex. A, at 95-96. She told the jury, "It is up to you to ignore the

9

government's attack on Mr. Speed's character and focus on how the ATF arbitrarily changed the law." *Id.* at 97.

Counsel's argument was improper and misleading. There was no evidence to support the assertion that the "ATF arbitrarily changed the law." As counsel knows, a federal statute defines what is a silencer under the law, not the ATF. Even if the ATF had changed how it classified silencers (an assertion for which there is no evidence), such an argument would be irrelevant. The only purpose of this argument is to urge the jury to acquit Speed on the basis of anti-law enforcement bias, as opposed to the real issue of whether the devices at issue met the definition of "silencer" as defined by federal statute.

Furthermore, the emphasis that other stores sell Hawk Innovative Tech devices (or similar devices) is likewise improper. There was no evidence that Hawk Innovative Tech devices—the devices at issue here—were sold in stores. Even if there was an evidentiary basis for that suggestion, however, it would still amount to an improper appeal for jury nullification. Such an argument does not go to the elements of the offense (i.e., it is not indicative of the design of or intent for the devices, or Speed's knowledge of the characteristics of the devices). Instead, the argument is an improper appeal for the jury to decide the case on the grounds that other people are doing the same thing as Speed. Such improper appeals for jury nullification should not be allowed in the next trial.

## CONCLUSION

For the foregoing reasons, the Court should order defense counsel not to make arguments seeking to put the jurors in the defendant's position, asserting facts not in evidence, attempting to define and mischaracterizing "reasonable doubt," advocating for jury nullification, inviting the jury to make its own independent determination of the applicable law, and arguing incorrect statements of the law.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____/s/_____
Thomas W. Traxler
Amanda Lowe
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone (703) 299-3746
Facsimile (703) 299-3980
Email: Thomas.traxler@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of January, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

_____/s/_____<br>
Thomas W. Traxler<br>
Assistant United States Attorney