# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:22-cr-165 |
| v. ) | Hon. Michael S. Nachmanoff |
| ) | |
| HATCHET M. SPEED, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT'S MOTION TO INSTRUCT JURY THAT THE FEDERAL DEFINITION OF A "SILENCER" REQUIRES FUNCTIONALITY WITHOUT MODIFICATION AT THE TIME OF POSSESSION

Comes now the defendant, Hatchet M. Speed, by counsel Brooke S. Rupert and Courtney Dixon, and moves the Court to instruct the jury that: (1) a device "for silencing, muffling, or diminishing the report of a portable firearm" means a device that, at the time of possession, functions to silence, muffle, or diminish the report of a portable firearm; and (2) "any combination of parts, designed … and intended for use in assembling or fabricating a firearm silencer" means that such combination is designed and intended, at the time of possession and without redesign, to assemble or fabricate a functioning firearm silencer.

## ARGUMENT

1. **For Purposes of the Federal Definition of a "Silencer" in 18 U.S.C. § 921(a)(24), a Device "For" Diminishing the Report of a Portable Firearm Must Mean That The Device Primarily Functions to Do So At the Time of Possession.**

Section 921(a)(24) of Title 18 defines a "silencer" as a device "for" reducing the sound caused by the explosion necessary to shoot a firearm. The Second Circuit has thus noted that the federal definition of a silencer is "defined by its functionality." *United States v. Kavoukian*, 354

F.3d 117, 120 (2d Cir. 2003); *see also United States v. Hall*, 171 F.3d 1133, 1151 (8th Cir. 1999) ("a jury instruction on the elements of the crime charged here must require a finding that the defendant knew that the relevant item could in fact function to diminish the sound of a gun"); *United States v. Sanders*, 240 F.3d 1279, 1283 (10th Cir. 2001) (reversing conviction because of absence of evidence possessor knew device functioned to diminish sound).

In addition, the primary purpose of the device at the time of possession must be to perform the function of reducing the sound resulting from shooting a firearm. *United States v. Hurd*, 642 F.2d 1179, 1182 (9th Cir. 1981) (affirming jury instruction defining a silencer as "a device one of the primary functions of which is to reduce the noise occasioned by the discharge of any portable weapon"). Indeed, responding to a question from another representative about whether the revised definition would apply to devices that "may quash sound in addition to their other lawful purposes," Representative Harold Volkmer, the principal sponsor of the 1986 amendment to the federal definition stated, "[n]o conventional choke, muzzle brakes, flash hiders, or compensators will fit within the definition of silencer … because they are not 'devices for silencing.…' Each of these devices has a common sporting purpose totally apart from muffling sound." 132 Cong. Rec. H1757 (April 10, 1986). Devices that have alternate primary functions thus do not fall within the definition of a "silencer" for purposes of the federal definition.

Of course, not all courts have interpreted the word "for" to require functionality. *See e.g.*, *United States v. Rose*, 522 F.3d 710, 720 (6th Cir. 2008) (device need only be designed to work as a silencer even if it is not functional). Indeed, the government has argued that "for" simply refers to the defendant's purpose, regardless of functionality. *See* Gov's. Resp. to Def's Mot. Dis., ECF No. 24 at 19). But divorcing functionality from the meaning of "for" in this context has absurd results. As a district court in the District of Columbia observed:

> If, as ATF asserts, the only relevant question to classifying a silencer is its purpose, then a pink silk ribbon tied in a bow around the barrel of a rifle could be a "firearm silencer"—as long as the ribbon's (delusional) inventor designed the ribbon with the hopes that it could be used "for diminishing the report" of a gunshot. This illustrates the dangers of a regulatory definition that turns on the subjective purpose of the inventor. In most cases, including this one, a much more useful data point is the device's actual capabilities.

*Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14, 28 (D.D.C. 2014). Indeed, if the definition of a "silencer" depends upon the subjective purpose of the purchaser, then registration for identical items that can diminish sound (such as conventional chokes, muzzle brakes, flash hiders, or compensators, that the congressional sponsor said do not qualify as "silencers") will turn on the possessor's intent rather than the characteristics of the device. The same item thus will be prohibited in the hands of some but not others. Finally, if a device can be "for" silencing even when the device cannot function as a silencer without redesign or modification, then the word "redesign" in 18 U.S.C. § 921(a)(24) would become surplusage. *See infra*.

Nonetheless, if the Court has any doubt as to whether the word "for" should be construed narrowly to require functionality at the time of possession or broadly such that only the possessor's purpose determines whether a device is "for" silencing the report of a firearm, it should "invoke the rule that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *United States v. Yates*, 574 U.S. 528, 547-48 (2015) (quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)). The rule of lenity requires courts to construe ambiguous criminal statutes against the government and in favor of the defendant." *United States v. Hunt*, 56 Fed. Appx. 210, 211 (4th Cir. 2003); *see also United States v. Santos*, 553 U.S. 507 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them"); *United States v. Hall*, 972 F.2d 67, 69 (4th Cir. 1992) ("Under the rule of lenity any criminal statute . . . must be construed in favor of the accused and against the government if it is ambiguous.").

The Supreme Court has invoked the rule of lenity in analogous circumstances to construe the definition of the word "made" in the National Firearms Act. Specifically, the Court construed the meaning of "made" in the context of firearms kits that could be assembled by the purchaser into either an unregulated rifle or a short-barreled firearm subject to regulation. *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505 (1992). Although a tax was imposed under 26 U.S.C. § 5821(a) "for each firearm made," the manufacturer of the kits argued that it had not "made" a short-barreled rifle but had only sold kits that could be assembled by the buyer into such a rifle. *Id.* at 510. The government argued that just as bike manufactures sell bikes that must be assembled by the purchaser, the firearm manufacturer had "made" firearms subject to the tax.

Five justices found that the statute was ambiguous and the rule of lenity applied to exclude the firearm kits from the tax. *Id.* at 518, 519. Three justices said it was ambiguous because the statute was not clear that it encompassed kits that could be assembled by the purchaser into either unregulated or regulated firearms. *Id.* at 517. According to the plurality, there was no ambiguity with respect to whether the statute regulated the selling of firearm kits "that can be used for *nothing except* assembling a [regulated] firearm." *Id.* 511 (emphasis added). The plurality continued:

> Here, however, we are not dealing with an aggregation of parts that can serve no useful purpose except the assembly of a firearm, or with an aggregation having no ostensible utility except to convert a gun into such a weapon. There is, to be sure, one resemblance to the latter example in the sale of the Contender with the converter kit, for packaging the two has no apparent object except to convert the pistol into something else at some point. But the resemblance ends with the fact that the unregulated Contender pistol can be converted not only into a short-barreled rifle, which is a regulated firearm, but also into a long-barreled rifle, which is not. The packaging of pistol and kit has an obvious utility for those who want both a pistol and a regular rifle, and *the question is whether the mere possibility of their use to assemble a regulated firearm is enough to place their combined packaging within the scope of 'making' one*.

*Id*. at 512–13 (emphasis added). Due to the ambiguity in the statutory text after considering the legislative history, the Court applied the rule of lenity and "resolve[d] the ambiguity in

Thompson/Center's favor" because "[m]aking a firearm without approval may be subject to criminal sanction, *as is possession of an unregistered firearm* and failure to pay the tax on one." *Id*. at 518 (emphasis added). Even though the case involved only the payment of a $200 tax, the Court applied the rule of lenity because possession of an unregistered firearm constitutes a federal crime.

Two justices – Scalia and Thomas – concluded that the statute was ambiguous because unlike other statutory definitions, the definition of a firearm does not include a "combination of parts" that can be assembled by the purchaser into a regulated firearm. *Id.* at 519-23 (Scalia, J., concurring). Justice Scalia's concurrence notes that the "kit's instructions emphasized that legal sanctions attached to the unauthorized making of a short-barreled rifle, and there was even carved into the shoulder stock itself the following: "WARNING. FEDERAL LAW PROHIBITS USE WITH BARREL LESS THAN 16 INCHES."" *Id.* at 523 (Scalia, J., concurring). According to Justice Scalia, "the ambiguity pertain[ed] to the much more fundamental point of whether the making of a regulated firearm includes the manufacture, without assembly, of component parts where the definition of the particular firearm does not so indicate." *Id*. at 519. Importantly, the Supreme Court's statutory construction did not turn on the manufacturer's intention or knowledge in "making" the firearm kit that it could be used to make a short-barreled rifle. Aside from the fact that such a construction would mean that identical items could be treated differently based solely on the intent of the manufacturer, evidence in the record made clear that the manufacturer was well aware that its kits could be used to assemble short-barreled rifles. *See Thompson/Ctr. Arms Co.*, 504 U.S. at 526 (Stevens, J., dissenting) (noting that the government "properly advised respondent of its reading of the statute and gave it ample opportunity to challenge that reading in litigation").

This case closely resembles the issue in *Thompson/Center Arms*. "Solvent traps are cleaning accessories that can be attached to the barrel of a firearm. They can also be converted to silencers." *Fosnight v. Jones*, 41 F.4th 916, 920 (7th Cir. 2022). Like the word "made," the word "for" could be construed narrowly to exclude things that do not function at the time of purchase as silencers, or it could be construed more broadly to encompass devices that can be modified to work as silencers if that is the possessor's intent at the time of possession. The question here, analogous to the one in *Thompson/Center Arms*, is whether "the mere possibility of [] use to [make] a regulated [silencer]" through drilling a hole in the solvent trap "is enough to place [the device] within the scope of" being "for" silencing or diminishing the report of a portable firearm. *Cf. Thompson/Center Arms*, 504 U.S at 513. Like the Supreme Court's decision in *Thompson/Center Arms*, this Court should apply the rule of lenity and construe the definition of a "silencer" narrowly to encompass items that function or have been made to function (either in its present state or through assembly) as silencers at the time of possession, as well as items that can only be used to make a silencer.

Relying on *Thompson/Center Arms*, the Third Circuit faced a similar ambiguity with respect to the meaning of the word "for" in another provision of the National Firearms Act, and resolved the issue by applying the rule of lenity. *United States v. Introcaso*, 506 F.3d 260 (3d Cir. 2007). In *Introcaso*, the Third Circuit vacated a defendant's conviction for possession of a pre-1899 shotgun that he had mounted on his wall. The government argued that it was not an "antique" because to qualify as an antique it must be a firearm "*for* which ammunition is no longer manufactured" – and modern ammunition could be used in the shotgun. *Id.* at 267 (emphasis added). The Third Circuit found the word "for" to be ambiguous, explaining:

> The plain text of the statute clearly exempts, inter alia, antique firearms, but provides little guidance concerning the precise question presented here. As the parties

suggest, "for" in the phrase "for which ammunition is no longer manufactured," § 5845(g), can be read two ways: in the sense of "specifically designed for" (design) or "able to be used in" (usability). If we read "for" to refer to design, that sense applies to both predicate phrases: guns are antique if manufacturers have stopped issuing ammunition of a specific design and if the market likewise no longer provides ammunition (here shells) of that design. The other reading would require us to understand "for" in two different senses: guns are antique if manufacturers have ceased to produce shells of a particular design for use in a range of guns of a certain period (design) and if the market no longer has shells that can be used in these guns (usability). *Id*. Although the first seems to us to be a better or more likely reading, *it does not reveal definitively congressional intent on this matter*.

*Id.* (emphasis added).

After determining that Congress did not clearly declare an intent to impose a registration requirement on pre-1899 firearms in which any modern ammunition is usable (in addition to or instead of guns for which ammunition is specifically designed), the Third Circuit applied the rule of lenity to conclude that the defendant was not liable for failing to register the firearm in question. *Id.* at 270.

Like the Third Circuit in *Introcaso* and the Supreme Court's decision in *Thompson/Center Arms*, the Court should apply the rule of lenity in this case in construing the definition of a "firearm silencer." It should therefore instruct the jury that a "device *for* silencing" the report of a firearm means a device that functions or was made to function as a silencer at the time of possession. *See United States v. Kwan*, 300 F. App'x 485, 486 (9th Cir. 2008) (affirming district court's conclusion that rule of lenity required jury instruction that adopted narrow construction of statutory definition of firearm).

**2. For Purposes of the Federal Definition of a "Silencer" in 18 U.S.C. § 921(a)(24), a "Combination of Parts Designed and Intended for Use" in Assembling a Silencer Refers to Kits That Do Not Require Redesign or Modification to Make a Silencer.**

The definition of a silencer in § 921(a)(24) provides that it "includ[es] any combination of parts, designed *or redesigned*, and intended for use in assembling or fabricating a firearm silencer

or firearm muffler." § 921(a)(24) (emphasis added). In order for the word "redesigned" to have meaning, a "combination of parts, designed … and intended for use in assembling or fabricating" a silencer must *not* require redesign or modification.

The most basic rule of statutory construction is that a statute "must be interpreted, if possible, to give each word some operative effect." *In re Ennis*, 558 F.3d 343, 346 (4th Cir. 2009) (citing *Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 209 (1997)). Courts construe a statute to give effect to all its provisions, so that no part is inoperative or superfluous. *See, e.g., Hately v. Watts*, 917 F.3d 770 (4th Cir. 2019).

The word "designed" refers to a maker's purpose. Webster's Third New International Dictionary 611 (the word 'design' is 'to plan or have in mind as a purpose; intend.'). In context, the words "designed or redesigned" must refer to a combination of parts involving an "original design" to assemble a silencer without modification, as well as a combinations of parts that are "redesigned" and modified with the purpose of assembling a silencer. If a combination of parts "designed and intended" for use in assembling a firearm silencer included parts that required "redesign" and modification, then the word "redesigned" in § 921(a)(24) would constitute surplusage.

Moreover, adjacent definitions contain the words "may readily be converted to," *e.g.* § 921(a)(3), that would be precisely suited to encompass unmodified solvent traps that could be readily altered into functioning silencers. But Congress did not choose to include "may readily be converted to" language in the definition of a firearm silencer or muffler. This omission within the same statute should be viewed as an intentional part of the legislature's statutory design (no pun intended). *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is

generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted).

Accordingly, the jury should be instructed that the definition of a "silencer" includes a combination of parts that are designed and intended, at the time of possession and without redesign, to assemble or fabricate a functioning firearm silencer, as well as a combination of parts that have been redesigned at the time of possession to assemble or fabricate a functioning firearm silencer, but does not include devices that have not been redesigned or modified to assemble or fabricate a functioning firearm silencer. As with the word "for" in the definition of firearm silencer, any ambiguity should be construed in favor of narrowing the definition in accordance with the rule of lenity.

## CONCLUSION

For these reasons, the Court should instruct the jury as set forth above.

Respectfully submitted on January 3, 2023.

                  **HATCHET SPEED**
                  By counsel:

                  Geremy C. Kamens
                  Federal Public Defender for the
                  Eastern District of Virginia

                  by: /s/_____
                  Courtney Dixon
                  *Pro hac vice*
                  DC Bar No. 1766415
                  Assistant Federal Public Defender
                  1650 King Street, Suite 500
                  Alexandria, Virginia 22314
                  Telephone: (703) 600-0800
                  Facsimile: (703) 600-0880
                  courtney_dixon@fd.org

Brooke Rupert
VA Bar No. 79729
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0800
Facsimile: (703) 600-0880
brooke_rupert@fd.org