IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 1:22-CR-165 |
| | ) |
| HATCHET M. SPEED, | ) |
| | ) |
| Defendant. | ) |

**<u>RESPONSE TO DEFENDANT'S MOTION FOR A NEW TRIAL</u>**

Two months ago, a federal jury convicted the defendant, Hatchet Speed, of three counts of possession of an unregistered silencer, in violation of the National Firearms Act (NFA), 26 U.S.C. § 5861(d). Speed has now moved for a new trial, arguing that the Court erroneously precluded him from introducing an out-of-court statement that he made to an FBI undercover employee that he believed the time to register the devices as silencers was when he completed a hole in the front end-cap of the devices. The Court excluded the evidence because it was relevant only to an impermissible mistake-of-law defense (i.e., a mistaken belief that the holes had to be completed for the devices to qualify as silencers under the law).

Speed's motion for a new trial should be denied. The Court has addressed this issue multiple times already. Speed fails to cite any authorities or offer any analysis that the Court has not already considered and rejected. Indeed, his argument is a nearly verbatim recitation of a motion for reconsideration that he filed prior to the retrial that led to his conviction. After hearing oral argument on that motion, the Court rejected Speed's arguments and reaffirmed its prior rulings excluding the evidence at issue. Because that ruling was correct, the Court should do the same here.

**BACKGROUND**

On September 6, 2022, the grand jury returned an indictment charging Speed with three counts of unlawful possession of a silencer that was not registered to him in the National Firearms Registration and Transfer Record (NFRTR), in violation of 26 U.S.C. §§ 5841, 5861(d), 5871. *See* Dkt. No. 1. The next day, Speed was arrested on these charges, had his initial appearance, and was released on a personal recognizance bond with conditions. *See* Dkt. No. 12. The Court held Speed's arraignment on September 22 and scheduled his jury trial to begin on December 12, 2022. *See* Dkt. No. 17.

### A. First Trial

Early in the litigation, Speed made clear that he intended to defend against the charges by arguing that the devices at issue—devices sold by Hawk Innovative Tech and marketed as purported "solvent traps" for cleaning firearm barrels—were not functional silencers. Prior to trial, he filed a motion to dismiss the indictment on vagueness and Second Amendment grounds, *see* Dkt. No. 23, which the Court denied, *see* Dkt No. 29. In the motion, Speed maintained that he could not be guilty of the charges because he understood the Hawk Innovative Tech devices not to be functional as silencers upon purchase and he intended to file an ATF Form 1 and register them if he drilled them to make them functional. *See* Dkt. No. 23, at 3-4.

On November 25, 2022, the government moved in limine to preclude the defense from introducing evidence regarding Speed's understanding of the operability of and time to register the Hawk Innovative Tech devices. *See* Dkt. No. 37, at 9-17; Dkt. No. 57, at 1-11. The government also objected to proposed Defense Exhibit 2, a portion of a transcript of a meeting between Speed and the FBI undercover employee (UCE) on March 22, 2022. *See* Dkt. No. 48, at 4-5. Specifically, the government objected to one sentence of the transcript in which Speed told

the UCE that "if you drill it and you don't submit the Form 1, then now you're a felon." *Id.* As the government explained in its motion in limine and objections, such evidence was relevant only to Speed's mistaken belief that the law required a device to be operable to constitute a "silencer" and subject to registration under the NFA. *See* Dkt. No. 37, at 9-17; Dkt. No. 48, at 4-5; Dkt. No. 57, at 1-11.

At a pretrial hearing on December 7, 2022, the Court granted the government's motion in limine. *See* Dkt. No. 83, at 1. "Pursuant to Rules 402 and 403," the Court precluded Speed "from presenting testimony or evidence regarding (1) his understanding of the operability of or time to register the devices at issue and (2) his mistake or ignorance of the law." *Id.* The Court also sustained the government's objection to Defense Exhibit 2, holding that "the sentence identified by the government regarding the defendant's mistaken understanding of the law is inadmissible under Rules 402 and 403 of the Federal Rules of Evidence." *Id.* at 3.

Speed's trial began on December 12, 2022. After the government rested its case, the defense moved for the Court to reconsider its ruling based on *Rehaif v. United States*, 139 S. Ct. 2191 (2019). *See* Ex. A, at 3. The defense argued that the excluded evidence showed "Speed did not know that solvent traps were silencers, and . . . that is a fact, a mistake of fact and a collateral fact, like the situation in *Rehaif*." *Id.* at 4.

The Court denied the motion for reconsideration, holding that it was "not persuaded that *Rehaif* changes th[e] analysis." *Id.* at 8. As the Court noted, the excluded evidence "really goes to the notion of a misunderstanding of the law as opposed to a misunderstanding of what this [device] was and what it was designed to do and why he had it." *Id.* Otherwise, the Court ruled that the "defense [was] free to argue that [Speed] believed he was purchasing a solvent trap, he intended to use it as a solvent trap, and that it had the characteristics of a solvent trap and did not

3

have the characteristics of a silencer." *Id.* The Court observed that its exclusion of the "one redacted line" from proposed Defense Exhibit 2 did "not preclude the defense from making that argument." *Id.*

The case was submitted to the jury late in the afternoon on December 13. *See* Dkt. No. 89. During deliberations the next day, information came to light that a juror had performed independent research, requiring the Court to excuse that juror and voir dire the remainder of the jury. *See* Dkt. No. 90. The following day, after an alternate juror was seated to replace the excused juror, one of the other jurors did not show up for deliberations, prompting the Court to seat the other alternate juror. *See* Dkt. No. 92. The newly constituted jury, with the two alternates, did not begin deliberating anew until that afternoon. *See id.*

The next day, on December 16, the jury indicated that it was deadlocked and unable to reach a verdict. *See* Dkt. No. 93. The Court gave an *Allen* charge, but the jury continued to indicate that it was deadlocked. *See id.* Early that evening, the Court declared a mistrial. *See id.* At the government's request, the Court scheduled a retrial to begin on January 17, 2023. *See id.*

**B.     Second Trial[1]**

On January 4, 2023, in advance of the retrial, Speed moved for the Court to reconsider its ruling excluding the sentence from proposed Defense Exhibit 2 ("if you drill it and you don't submit the Form 1, then now you're a felon"). *See* Dkt. No. 108. In support of his motion, Speed relied on *United States v. Heyward*, 42 F.4th 460 (4th Cir. 2022). *See* Dkt. No. 108. The

---

[1] In Speed's motion for a new trial, he devotes considerable attention to discussing a juror communication that the government received after the first trial, which the government disclosed to the defense. In addressing the government's handling of this communication, the Court found that the government "follow[ed] the rules scrupulously," "complied in every respect, and . . . promptly brought [the communication] to the Court's attention appropriately on an *ex parte* basis." Ex. B, at 32-33.

4

government opposed Speed's motion, noting that *Heyward* was simply an application of *Rehaif* and did not change the Court's analysis in excluding the evidence. *See* Dkt. No. 115, at 1. As the government further explained, *Heyward* and *Rehaif* were inapposite because the law at issue in those two cases was materially different than the law at issue in Speed's case. *See id.* at 2-5.

At a pretrial hearing on January 9, the Court denied Speed's motion for reconsideration. *See* Ex. B, at 15-17. The Court recognized that *Heyward*, which involved "the reversal of the guilty plea in 922(g) where an individual specifically alleged that he did not understand that he fell into the category of prohibited persons," was not analogous to this case. *Id.* at 16. The Court explained that, to prove the § 5861(d) offense in this case, the government had to prove that "Speed understood the features or characteristics of the device" but not that Speed "knew that this met the statutory definition" of a silencer. *Id.* The Court emphasized that Speed had "every right under this statute to argue that he thought this was a solvent trap and that he did not believe that it had the characteristics and features of a silencer." *Id.*

Speed's retrial began on January 17, 2023. *See* Dkt. No. 137. After a two-day trial, the jury deliberated for less than two hours before convicting Speed of all three counts in the indictment. *See* Dkt. No. 140. The Court scheduled Speed's sentencing hearing for April 13, 2023. *Id.* At the defense's request, the Court extended the deadline to allow 45 days to file posttrial motions. *See* Dkt. No. 143.

### C.     Motion for a New Trial

On March 6, 2023, Speed filed the pending motion for a new trial. *See* Dkt. No. 146. In his motion, he argues that the Court erred in excluding "evidence that [he] did not know he possessed 'silencers' as defined by federal law." *Id.* at 8. Specifically, he references the excluded sentence from proposed Defense Exhibit 2 as being erroneously excluded. *See id.* at 9.

Speed repeats the same arguments that he previously made in his motion for reconsideration prior to the retrial, attempting to analogize his case to *Heyward*. *See id.* at 8-10.

## DISCUSSION

Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). But such motions "are highly disfavored" and should be "grant[ed] only 'sparingly.'" *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021) (quoting *United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017)). The Court should not exercise its discretion to grant a new trial unless "it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006).

**A.  The Court Properly Excluded the Evidence Because It Was Relevant Only to an Impermissible Mistake-of-Law Defense.**

Section 5861(d)—the statute that Speed was charged with violating—is silent on the mental state necessary to commit the offense. It simply states that "[i]t shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The term "firearm" includes "any silencer (as defined in section 921 of title 18, United States Code)." 26 U.S.C. § 5845(a)(7). Section 921, in turn, defines the term "firearm silencer" to "mean any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(25).

In *Staples v. United States*, 511 U.S. 600 (1994), the Supreme Court addressed the necessary mental state that the government must establish to prove a violation of § 5861(d).

6

Relying on the general common-law rule that a criminal offense requires proof of a mens rea, the Court determined that "the usual presumption that a defendant must know *the facts* that make his conduct illegal should apply." *Id.* at 619 (emphasis added). The Court therefore held that "to obtain a conviction, the Government should have been required to prove that [the defendant] knew of *the features* of his [firearm] that brought it within the scope of the [National Firearms] Act." *Id.* (emphasis added).

To satisfy this requirement, the government has to prove only "knowledge of the facts that constitute the offense," not knowledge of the law. *Bryan v. United States*, 524 U.S. 184, 193 (1998). There is no requirement that the defendant "knew what features define a 'firearm' under 26 U.S.C. § 5845(a)." *United States v. Wilson*, 979 F.3d 889, 904 (11th Cir. 2020) (quoting *United States v. Ruiz*, 253 F.3d 634, 638 n.4 (11th Cir. 2001)) (internal quotation marks omitted). Nor does the government have to prove that the defendant "knew the firearm must actually be registered because of 26 U.S.C. §§ 5861(d) and 5845(a)." *United States v. Jamison*, 635 F.3d 962, 968 (7th Cir. 2011).

Because the mens rea element of the offense does not require knowledge of the law, mistake of law is not a proper defense in a prosecution under § 5861(d). When considering the viability of a mistake-of-law defense, "the basic rule is extremely simple: ignorance or mistake of . . . law is a defense when it negatives the existence of a mental state essential to the crime charged." 1 Wayne R. LaFave, Substantive Criminal Law § 5.6(a) (3d ed.). For § 5861(d) offenses, the mental state requires only that the defendant "knew of the *features* of his [firearm] that brought it within the scope of the [National Firearms] Act," a factual matter that does not require knowledge of the law. *Staples*, 511 U.S. at 619 (emphasis added). Thus, under § 5861(d), "ignorance of the law or a mistake of law is no defense to criminal prosecution."

*United States v. Cox*, 906 F.3d 1170, 1190 (10th Cir. 2018).

With these background principles in mind, the Court properly excluded the evidence at issue (that is, Speed's statement to the UCE that "if you drill [the device] and you don't submit the Form 1, then now you're a felon"). As the Court previously recognized, the evidence was not probative of Speed's knowledge of whether the device had the features and characteristics of a silencer. *See* Ex. A, at 8; Ex. B, at 15-17. The statement reflects a belief that a device had to have the hole drilled (i.e., be operable) to meet the legal definition of a silencer and be subject to registration under the NFA. But, as the Court previously held, a device does not have to be operable to qualify as a silencer under federal law. *See, e.g.*, Ex. B, at 23 (overruling objection to instruction that stated that a device need not be operable to constitute a silencer).[2] Thus, Speed's statement reflected a mistaken understanding of the law and was properly excluded. *See* Dkt. No. 37, at 14-17 (discussing analogous cases in which federal courts of appeals have excluded evidence of a weapon's operability).

**B. The Cases Relied on by Speed Do Not Dictate a Different Result.**

In arguing that the evidence should have been admitted, Speed primarily relies on *United States v. Heyward*, 42 F.4th 460 (4th Cir. 2022), a relatively recent case in which the Fourth Circuit applied the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). But, as the Court previously recognized, *Heyward* is not analogous here. *See* Ex. B, at 16.

In *Rehaif*, the Supreme Court held that, to convict a defendant under 18 U.S.C. §§ 922(g) and 924(a)(2), the government must prove "that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."

---

[2] The government has briefed at length the issue of whether a device has to be operable to qualify as a silencer and adopts those arguments herein. *See* Dkt. No. 24, at 4-6; Dkt. No. 37, at 11-13; Dkt. No. 57, at 2-8; Dkt. No. 59, at 2-3; Dkt. No. 114, at 2-5.

139 S. Ct. at 2200.  In other words, the government must prove that the defendant "knew he had the relevant status when he possessed [the firearm]." *Id.* at 2194.  The *Rehaif* Court did not alter the mental state required for violating § 5861(d) as announced by *Staples* but, in fact, cited *Staples* favorably throughout the opinion.  *See Wilson*, 979 F.3d at 906-07 (explaining that *Rehaif* did not change the requisite mens rea for a violation of § 5861(d)).

The Fourth Circuit applied *Rehaif* three years later in *Heyward*.  In *Heyward*, the defendant "pleaded guilty to 'knowingly' possessing a firearm after being convicted of 'a crime punishable by imprisonment for a term exceeding one year.'"  42 F.4th at 464 (quoting §§ 922(g)(1), 924(a)(2)).  The defendant, however, was not advised that the government had to prove that he knew he belonged to the relevant category of persons barred from possessing a firearm (i.e., that he had been convicted of a crime punishable by imprisonment for a term exceeding one year).  *See id.*  The Fourth Circuit held that there was a reasonable probability he would not have pleaded guilty if he had been so advised.  *See id.* at 470.  The Fourth Circuit emphasized that the defendant had "repeatedly insisted that he had not known of the relevant fact—that is, his status as a felon—that made it unlawful for him to possess a firearm."  *Id.* at 467.  Specifically, the Fourth Circuit described how the record suggested that the defendant did not know that his prior conviction, which was labeled a misdemeanor, was punishable by a sufficient length of imprisonment to make him a prohibited felon.  *See id.* at 467-68.  The Fourth Circuit therefore vacated the guilty plea.  *See id.* at 470-71.

In *Heyward*, the defendant's mistake or ignorance of law tended to negate "the existence of [the] mental state essential to the crime charged."  LaFave, *supra*, § 5.6(a).  The statute at issue, as interpreted in *Rehaif*, required that the defendant know that he had been convicted of a crime punishable by imprisonment for a term exceeding one year.  Thus, if the defendant

9

mistakenly believed that his prior conviction was not punishable by that length of time, he would lack the requisite mental state.

The mental state required to commit the § 5861(d) offenses in this case was materially different. Here, Speed's mistake of law—which involved a mistaken belief that a device must be operable to constitute a "silencer" under the NFA—did not negate the mental state essential to the crime charged. The government did not have to prove that Speed knew his devices qualified as silencers under the law. *See Wilson*, 979 F.3d at 904. The government needed to prove only that Speed knew the "*features* of his [silencers] that brought [them] within the scope of the [National Firearms] Act." *Staples*, 511 U.S. at 619 (emphasis added). Because a device does not need to be operable to meet the legal definition of a silencer, the evidence that Speed sought to introduce did not tend to negate that mental state.

C.  **Even if the Court Erred in Excluding the Evidence, the Error Was Harmless.**

Under the federal rules, "[a]ny error . . . that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). The advisory committee notes reflect that this harmless-error standard applies to a motion for a new trial.[3] *Id.* advisory committee's note to 1944 adoption; *see also United States v. Smith*, 451 F.3d 209, 222 (4th Cir. 2006) (holding that the defendant was "not entitled to a new trial" because "[g]iven the strength of the prosecution's case, the court's error in limiting . . . cross-examination . . . was harmless").

---

[3] Speed cites to *United States v. Jennings*, 438 F. Supp. 2d 637 (E.D. Va. 2006), for the proposition that "[u]nder Rule 33, the trial court's discretion is not limited by the plain and harmless error standards that govern on appeal." Dkt. No. 146, at 6 n.2. But *Jennings* says nothing about whether the harmless-error standard applies, only that the plain-error standard for appeals does not apply. And since *Jennings*, the Fourth Circuit has held that "[w]hen a defendant fails to object to a jury instruction, even if there were no legal grounds for challenging the instruction at the time it was given, a district court should deny a motion for a new trial in the absence of plain error." *United States v. Sprouse*, 517 F. App'x 199, 204 (4th Cir. 2013).

The standard for assessing harmlessness under Rule 52 is well settled. "An error is harmless if [the Court] can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *United States v. Burfoot*, 899 F.3d 326, 340 (4th Cir. 2018) (quoting *United States v. Heater*, 63 F.3d 311, 325 (4th Cir. 1995)). Or, "[p]ut another way, an error is harmless if it's 'highly probable that [it] did not affect the judgment.'" *Id.* (quoting *United States v. Nyman*, 649 F.2d 208, 212 (4th Cir. 1980)). "The decisive factors to consider are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." *United States v. Caldwell*, 7 F.4th 191, 204 (4th Cir. 2021) (quoting *Burfoot*, 899 F.3d at 340-41) (internal quotation marks omitted). And "[t]he overall strength of the government's evidence constitutes an important factor in this inquiry." *United States v. Recio*, 884 F.3d 230, 238 (4th Cir. 2018).

While Speed's knowledge was a key issue at trial, the government's evidence proving this element was strong. First, Speed made numerous statements to the UCE showing that he knew the devices were designed to be silencers. In recorded conversations with the UCE, Speed discussed the use of the so-called solvent traps to circumvent silencers. *See* Gov't Trial Exs. 2C, 2D, 3F, 3G, 3H. For example, when the UCE asked, "can you get more than one round through them, and they still stay quiet," Speed responded that he "ha[d] to test and see . . . but yeah, uh, they stay quiet." Gov't Trial Ex. 3F. Speed even confirmed to the UCE that he thought the devices would come in handy when taking violent action to wipe out the opposition, *see* Gov't Trial Ex. 3E, proving that he knew the devices were designed to be silencers and not for cleaning firearm barrels. Speed's statements to the UCE left no doubt that he knew the devices were designed to serve as silencers and that he possessed them for that purpose.

Second, the context in which Speed purchased the Hawk Innovative Tech devices proved that he knew and intended for them to be silencers. At trial, the evidence showed that Speed was panic buying firearms from February to May 2021, purchasing twelve firearms and spending more than $40,000 at stores that sold firearms, firearm accessories, and ammunition. *See* Gov't Trial Exs. 1E, 13, 16. Initially, he purchased four silencers legally from Silencer Shop on February 15, 2021—two silencers for a 9mm caliber firearm and two silencers for a .45 caliber firearm. *See* Gov't Trial Ex. 18. But then on March 11, 2021, Speed received an email from Silencer Shop that put him on notice that the necessary ATF approval for the transfer of the silencers would likely take a while. *See* Gov't Trial Ex. 20C. Less than a week later, on March 17, 2021, Speed purchased the three Hawk Innovative Tech devices, which were not registered to him in the NFRTR. *See* Gov't Trial Exs. 20E, 20F, 61. Notably, one was for a 9mm and another was for a .45—the same caliber sizes that Speed was waiting to receive from his Silencer Shop purchase. *See* Gov't Trial Exs. 20E, 20F. Within a week, the Hawk Innovative Tech devices were delivered to Speed. *See* Gov't Trial Exs. 21A, 21B. The reasonable inference was that Speed purchased the Hawk Innovative Tech devices to circumvent the wait time for obtaining ATF approval for the transfer of silencers. This further proved that he knew the Hawk Innovative Tech devices were designed to be silencers and bought them for that reason.

Third, the evidence showed that Speed was well acquainted with silencers when he purchased the Hawk Innovative Tech devices. In June 2020, Speed purchased three silencers from Silencer Shop, all for a 7.62 caliber firearm. *See* Gov't Trial Ex. 18. In February 2021, he purchased the four silencers from Silencer Shop for 9mm and .45 caliber firearms. *See id.* A month later, he purchased the three Hawk Innovative Tech devices at issue in this case. Given Speed's familiarity with silencers when he purchased the Hawk Innovative Tech devices, the

jury could readily infer that he knew what he was purchasing.

In light of this evidence, the issue of Speed's knowledge was not close. In arguing that it was, Speed relies on the fact that the first trial resulted in a hung jury, claiming that "the government was unable to convince a jury of [his] guilt unanimously beyond a reasonable doubt" and "fail[ed] to prove its case." Dkt. No. 146, at 2. But he fails to consider whether the jury's indecision was influenced by the fact that, as the Court expressly found, his counsel made multiple improper arguments during closings. *See* Ex. B, at 24-27 (pretrial hearing on January 9, 2023); Ex. C (closing arguments during initial trial on December 13, 2022). In any event, in the retrial, the jury deliberated for less than two hours before finding him guilty of all three counts, without expressing any indications that it struggled with the decision. *See* Dkt. No. 140.

In addition to the strength of the government's case, the limited nature of the Court's ruling further shows that the exclusion of the evidence was harmless. Speed maintains that the Court erred in excluding one statement that he made to the UCE: "if you drill it and you don't submit the Form 1, then now you're a felon." But other evidence was introduced demonstrating that Speed knew the devices did not have a completed hole in the front end-cap and that a hole needed to be drilled for the device to become a functional silencer.[4] At the retrial, counsel argued in closings that the absence of a completed center hole showed that Speed did not know

---

[4] *See* Gov't Trial Ex. 2C ("HS: I could—I—I bought a couple of those. You have to . . . They—they don't—they don't have a hole. . . . So you have to, like, bore a hole, which I haven't done. . . . But the idea is to get everything except that, and then you as—you get a good drill press, and you know you're doing, just drill straight through."); Gov't Trial Ex. 2D ("HS: But I also don't have a drill press. . . . Um, but I've—I've got—I figure, at least I'm closer. If I do ever need to use it, all I have to do is find somebody with a drill press. . . . And maybe some of them sell it with the hole. I-I just know the ones I got . . ."); Gov't Trial Ex. 3H ("HS: So, you—you buy it sized for a particular caliber, . . . but then yes, your . . . drill bit has to be the right size . . . to drill. . . . And I haven't figured that detail out. I just figure when I want to figure that detail out, it will be easier to figure out the drill bits and whatnot. If that's all I have to figure out then everything is . . .").

the devices were silencers. *See* Ex. D, at 10 ("He didn't know they had the same characteristics as silencers, because everything that he was aware of -- their name, the inserts, the price, the screens, the lack of the hole -- all of those things screamed these are solvent traps.").[5]

Under these circumstances, it is not highly probable that the exclusion of Speed's one statement to the UCE affected the jury's verdict. Thus, even if the exclusion of that evidence was erroneous (which it was not), the error would be harmless.

## CONCLUSION

For the foregoing reasons, the Court should deny Speed's motion for a new trial.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____/s/_____
Thomas W. Traxler
Amanda Lowe
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone (703) 299-3746
Facsimile (703) 299-3980
Email: Thomas.traxler@usdoj.gov

---

[5] *See also* Ex. D, at 4 ("*[T]he lack of that hole is the reason why Mr. Speed is not guilty, because if a bullet cannot get out, then, members of the jury, that is what you call reasonable doubt*. Mr. Speed purchased three Hawk Innovative Tech solvent traps; and unlike the commercial silencers he purchased, they did not have serial numbers, they did not come with a tax stamp, and *they did not have a hole in the front end cap*; and these solvent traps didn't have these things because they are not silencers. These devices did not meet the legal definition of a silencer, and there is not one single piece of evidence that Mr. Speed ever formed the intent to turn them into silencers, and we know that because almost a year and a half later after he bought and received the devices, they were in the exact same condition as when he bought them, useful for one purpose: to collect solvent when cleaning a firearm. *That is why Mr. Speed did not know and could not know that these devices that he possessed did not meet the legal definition of a silencer*." (emphasis added)).

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of March, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

                                                /s/
                                Thomas W. Traxler
                                Assistant United States Attorney