UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HATCHET M. SPEED,<br>　　　　　*Defendant.* | Case Number 1:22-cr-165 |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Hatchet Speed's Motion for a New Trial (Dkt. No. 146). The Court has reviewed the Defendant's supplemental materials (Dkt. No. 148) and the government's opposition (Dkt. No. 149). Finding that the parties have adequately presented the issues in their papers, the Court will resolve the motion without hearing oral argument. For the reasons that follow, Defendant's motion will be denied.

**I.     BACKGROUND**

In September 2022, Defendant Hatchet Speed was indicted on three counts of unlawful possession of an unregistered silencer, in violation of 26 U.S.C. §§ 5841, 5861, and 5871. *See* Dkt. No. 1. Speed's first trial began on December 12, 2022, and resulted in a hung jury. His second trial began on January 17, 2023, and resulted in convictions on all counts. Dkt. No. 140. Speed now seeks a third trial, arguing that the Court erroneously excluded critical evidence.

**A.     Factual Background[1]**

Speed came to the attention of the FBI following his participation in the incursion at the United States Capitol Building on January 6, 2021.[2] In the ensuing investigation, law enforcement

---

[1] Unless otherwise cited, this section draws from the Presentence Investigation Report ("PSR") (Dkt. No. 150).

[2] Speed has been tried, convicted, and sentenced for this conduct in the federal district court for the District of Columbia. *See United States v. Speed*, Case No. 1:22-cr-244 (D.D.C.).

identified Speed as a naval reservist holding a top-secret security clearance. They further discovered that, in the four months following January 6, 2021, Speed spent over $50,000 on at least twelve firearms and various parts and ammunition because—as he explained to an undercover employee of the FBI ("UCE")—he felt the need to "panic buy[]" firearms during this time. Speed's comments to the UCE glorified convicted domestic terrorists and attempted to rationalize the use of violence to further his expressed anti-government and anti-Semitic beliefs.

One such purchase occurred on February 16, 2021, when Speed bought four silencers from an online retailer, designated Herndon Arms in Virginia as his pick-up location, and completed the paperwork required by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").[3] However, on March 11, 2021, a Herndon Arms employee informed Speed that, due to ATF's processing backlog, it could be more than a year before Speed would be able to lawfully take possession of the already-purchased silencers.

Six days later, on March 17, 2021, Speed purchased three devices from online retailer Hawk Innovative Tech ("HIT") that were labeled as both "particulate filters" and "solvent filters."[4] Upon receipt, Speed placed them in his personal storage unit alongside his existing firearms stockpile. These HIT devices are the basis of Defendant's conviction.

---

[3] The National Firearms Act ("NFA"), 26 U.S.C. §§ 5801–5872, imposes requirements that must be met before a firearm may be transferred. A person seeking to purchase a firearm from a manufacturer must first file an application (Form 4) with the ATF and pay a tax. If the application is approved, the ATF Director will affix an NFA stamp on the original application and return the approved application. Only then can the purchaser take possession of the firearm. *See* PSR ¶ 9 (citations omitted).

[4] A "particulate filter," also known as a "solvent trap" or "patch trap," is a device that attaches to the end of a gun's barrel to catch (trap) cleaning fluids (solvents) and cleaning materials (patches) during the cleaning process. According to the government's ATF expert, solvent traps are usually made with translucent plastic materials (to increase visibility during the cleaning process). *See* Dkt. No. 145 at 58:19–59:9. Solvent traps are affordable, typically costing between $10 and $20. *Id.* at 59:6–7. And, unlike silencers, standard solvent traps do not include baffles or spacers, as such components would serve no purpose on a device intended for cleaning a firearm. *See id.* at 62–68. By contrast, the HIT devices were made of opaque, metal materials; costed between $170 and $350; included baffles and spacer; and had end-caps with pre-drilled pilot holes.

One year later, in a recorded conversation, the UCE told Speed he had seen people on YouTube selling solvent oil filters ("solvent traps," Speed corrected) "to—to circumvent [the regulation of] suppressors." *See* Dkt. No. 24–4 at 2.[5] Speed responded:

> I bought a couple of those. . . . [T]hey don't have a hole. . . . So you have to, like, bore a hole, which I haven't done. . . . But the idea is to get everything except that, and then you as—you get a good drill press, and you know you're doing, just drill straight through.

*Id.* at 2–3.

The UCE then noted that the people in the videos were using the device "like a . . . suppressor." *Id.* at 3. Speed responded:

> Yea, they call it a solvent trap. . . . One thing is . . . *if you drill it and you don't submit the Form One, then now you're a felon* . . . not just that, but I also don't have a drill press. . . . but I've—I've got—I figure, at least I'm closer. If I ever do need to use it, all I have to do is find somebody with a drill press.

*Id.* at 3 (emphasis added).[6]

In April 2022, Speed had another conversation with the UCE in which Speed again noted that he bought so-called "solvent traps" online, and they seemed "like good quality." *See* Dkt. No. 24-5 at 5. Explaining what he believed to be a loophole, Speed advised the UCE that he should fill out a Form 1 before drilling the hole:

> To make it legal . . . essentially what you're doing at that point is you are saying, 'Rather than buying a suppressor, I am making one, and here is my ATF paperwork.' . . . So the idea is that—that would be the legal way of doing it, you know. If you forget to fill out Form One, nobody ever finds you on the form."

---

[5] "Suppressors" are another term for "silencers." Both refer to devices that muffle, suppress, or diminish the report of a portable firearm.

[6] Like the process described above, *see supra* note 3, individuals who want to make an NFA-covered firearm cannot do so unless they first file an application (Form 1) with the ATF and pay a tax. The ATF Director must approve the application before the firearm may be made. *See* PSR ¶ 10 (citations omitted).

*Id.*[7]

In June 2022, the FBI executed a search warrant on Speed's storage unit. Among the multiple firearms and parts seized were the three HIT devices, which were sent to ATF for testing. The ATF Firearms Enforcement Officer ("FEO") concluded that, despite advertising to the contrary, the "objective design features and characteristics of these [devices] demonstrate that they are both inefficient when used as solvent traps but are particularly effective firearm silencers." PSR ¶ 31. Notably, the HIT devices were made from metal (unlike standard solvent traps) and were opaque (unlike standard solvent traps). The devices also included parts and dimensions that are unnecessary for cleaning (but made them more effective in reducing the report of a firearm). Moreover, the HIT devices had a pilot hole that served as a guide for drilling through the end-cap.[8] Indeed, as the FEO explained at trial, once drilled, the HIT devices were strikingly similar to patented silencers.

### B. Procedural Background

The argument before the Court in the instant motion has been raised and adjudicated at least three times. In November 2022, Speed submitted proposed exhibits for the first trial that included Defense Exhibit 2: Speed's statement to the UCE that "if you drill [the device] and you don't submit the Form One, then now you're a felon." *See* Dkt. No. 39. The government objected to that exhibit (and others) and sought to preclude Speed from asserting, or introducing evidence to support, an impermissible mistake-of-law defense. Dkt. No. 37; Dkt. No. 48 at 4–5. Specifically,

---

[7] In the same conversation, Speed discussed targeted assassinations of "people in [his] neighborhood [who] are actually, uh, reachable by someone like [him]." Dkt. No. 24-6 at 3. When asked by the UCE whether "[his] solvent traps would come in handy at that point," Speed responded, "Yeah, that's the idea." *Id.* at 4.

[8] In less than ten minutes and with the use of a regular hand drill, the FEO was able to complete the hole and reassemble the device with the included parts to create a fully functioning firearm silencer that, in testing, successfully reduced the report of a handgun by 23.58 decibels. *Cf.* William J. Murphy et al., *The reduction of gunshot noise and auditory risk through the use of firearm suppressors and low-velocity ammunition*, 57 Int'l J. of Audiology 28 (2018) (noting that standard silencers are designed to reduce reports by 17 to 24 decibels).

the government argued that Speed's proposed exhibit was relevant only to his mistaken belief that the law required a device to be an operable silencer before it was subjected to the National Firearms Act's registration requirement. *See* Dkt. No. 37 at 9–17; Dkt. No. 57 at 1–11; Dkt. No. 48 at 4–5. After hearing oral argument on December 7, 2022, the Court sustained the government's objection to Speed's proposed exhibit, precluding Speed "from presenting testimony or evidence regarding (1) his understanding of the operability of or time to register the devices at issue and (2) his mistake or ignorance of the law." *See* Dkt. No. 83.[9]

The case proceeded to trial later that month. At the close of the government's case-in-chief, defense counsel moved the Court to reconsider its evidentiary ruling regarding Defense Exhibit 2, arguing that the Court had excluded (permissible) mistake-of-*fact* evidence by mischaracterizing it as (impermissible) mistake-of-*law* evidence. *See* Dkt. No. 96 at 92:15–24 ("Speed did not know that solvent traps were silencers, and . . . that is a fact, a mistake of fact and a collateral fact, like the situation in [*Rehaif v. United States*, 139 S. Ct. 2191 (2019)]."); *see also* Dkt. No. 88 at 8–10. Noting that it had already considered and ruled on Speed's arguments regarding the applicability of *Rehaif*, the Court denied Defendant's motion for reconsideration. Dkt. No. 96 at 96:1–14. Specifically, the Court found that the excluded evidence "really goes to the notion of a misunderstanding of the law as opposed to a misunderstanding of what this [device] was, and what it was designed to do, and why he had it." *Id.* (stating that—notwithstanding the Court's decision to exclude the evidence—the "defense [was] free to argue that [Speed] believed he was purchasing a solvent trap, he intended to use it as a solvent trap, and that it had the characteristics of a solvent trap and did not have the characteristics of a silencer"). The case was submitted to the jury to begin deliberation on December 13, 2022. Three days later, after the seating of two alternate jurors and

---

[9] The Court also found, when ruling on contested jury instructions, that a device need not be operable to meet the statutory definition of "silencer" in 18 U.S.C. § 921(25). *See, e.g.*, Dkt. No. 131 at 18–22.

an unsuccessful *Allen* charge, the Court declared a mistrial and scheduled a new trial to begin the next month. Dkt. No. 93.

In January 2023, Speed again sought to admit evidence of his statement regarding the legality of the unregistered device, this time relying on *United States v. Heyward*, 42 F. 4th 460 (4th Cir. 2022), the Fourth Circuit's application of *Rehaif*. *See* Dkt. No. 108. After extensive oral argument, the Court again denied Defendant's motion, finding that neither *Heyward* nor *Rehaif* were applicable to this case. Dkt. No. 131 at 15:2–16. The Court explained that, unlike the statute at issue in those cases, § 5861(d) required that the government prove only that "Speed understood the features or characteristics of the device" but not that Speed "knew that this met the statutory definition" of a silencer. *Id.* The second trial began on January 17, 2023. Dkt. No. 137. After two days of trial and two hours of deliberation, the jury voted to convict Speed on all counts. Dkt. No. 140.[10]

In March 2023, Speed filed the instant motion, once again attempting to analogize his case to *Rehaif* (by way of *Heyward*) and arguing that the Court's erroneous evidentiary rulings entitle him to a new trial. Dkt. No. 146. For the reasons that follow and those articulated from the bench (at the first pretrial conference, the post-trial motions hearing, and the second pretrial conference), Defendant's motion will be denied.

## II.   DISCUSSION

The Federal Rules of Criminal Procedure allow courts to vacate any judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). However, that practice is "highly disfavored," and courts should grant such motions "sparingly." *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021). Only when "fundamental fairness or the integrity of the trial are

---

[10] Speed was sentenced on April 13, 2023. Dkt. No. 155.

substantially in doubt" should such measures be taken. *United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006).

In pursuit of that extraordinary remedy, Defendant argues that he is entitled to a new trial because the Court erred in rejecting the admission of evidence concerning his belief that the device at issue was not a "silencer." Dkt. No. 146.[11] Defendant argues that—in his view of the law—the government was required to prove that he knew his silencer was in fact a "silencer."[12] *Id.* at 8. Specifically, Defendant asserts that the Court should have allowed him to present evidence of his statement that "if you drill the [device] and you don't submit a Form One, then you're a felon." Dkt. No. 146 at 9.

In response to a motion for new trial, the Court must determine (1) whether there was a trial error and (2) if so, whether, because of that error, the "fundamental fairness or integrity of the trial result is substantially in doubt." *See United States v. Jennings*, 438 F. Supp. 2d 637, 642 (E.D. Va. 2006). Here, the Court need not reach the second question because it finds that its evidentiary ruling was not erroneous. Because much of the Defendant's arguments are wrapped up in his misunderstanding of what is required to sustain a conviction under 26 U.S.C. § 5861(d), the Court starts by (once again) explaining the government's trial burden. It then explains why, in light of that burden, Defendant's proffered statement is irrelevant and thus inadmissible.

---

[11] Defendant devotes several pages of his motion to recounting the facts surrounding a letter that a juror sent to the government after the first trial. *See* Dkt. No. 146 at 2–4. The Court heard argument on this issue at the January 9, 2023, pretrial conference. *See* Dkt. No. 131 at 64–69. In the instant motion, Speed makes no argument as to why the existence of that letter entitles him to a new trial or why the Court erred in rejecting his other challenges to the letter earlier in the proceedings. Accordingly, there is no issue for the Court to address.

[12] The Court notes that Defendant does not argue that he believed he was purchasing run-of-the-mill solvent traps with which to clean his firearms or even that he never intended to complete the process of converting the devices into fully functioning silencers. Defendant only argues that he did not believe an inoperable silencer was nonetheless a "silencer" as defined by the National Firearms Act. In other words, Defendant believed that he had found a loophole in the law that permitted to possess these devices. As proven at trial, he had not. Moreover, as noted above, the Court has already ruled that a device need not be operable to meet the statutory definition of "silencer" in 18 U.S.C. § 921(25), and Speed does not challenge that ruling here. *See supra* note 4.

### A. Government's Burden at Trial

Defendant was charged and convicted under § 5861(d), which simply states that "it shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The term "firearm" is then defined broadly enough to include "any silencer." 26 U.S.C. § 5845(a)(7). And "silencer" is further defined (in a different statute) as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling of fabricating a firearm silencer or firearm muffler . . . ." 18 U.S.C. § 921(a)(25).

Notably missing from that chain of definitions, however, is any mention of a *mens rea* requirement. The Supreme Court addressed this issue in *Staples v. United States*, 511 U.S. 600 (1994). There, the Court looked to common-law principles and noted that, in the absence of an expressed statutory *mens rea*, there is a presumption that a defendant must at least be aware of the facts that make their conduct illegal. *Id.* at 619. Applying that principle to § 5861(d), the Court held that to obtain a conviction, the government is "required to prove that [the defendant] knew of the features of his [firearm] that brought it within the scope of the [National Firearms] Act." *Id.* Put differently: a prosecutor need only prove "knowledge of the *facts* that constitute the offense." *Bryan v. United States*, 524 U.S. 184, 193 (1998). Not knowledge of the law. *United States v. Moody*, 2 F.4th 180, 197–98 (4th Cir. 2021). Not knowledge of what constitutes a "firearm." *United States v. Wilson*, 979 F.3d 889, 904 (11th Cir. 2020). And not that the defendant knew he needed to register the device but chose not to do so. *United States v. Jamison*, 635 F.3d 962, 968 (7th Cir. 2011).

In an effort to expand the government's burden, Defendant cites the Supreme Court's decision in *Rehaif v. United States* and the Fourth Circuit's application of that decision in *United States v. Heyward*. *See* Dkt. No. 146 at 8. Neither applies here.

In *Rehaif*, the Supreme Court addressed 18 U.S.C. §§ 922(g) and 924(a)(2). 139 S.Ct. at 2194. Without delving too deeply into the specifics of those statutes, it is worth noting that, together, they criminalize the knowing possession of a firearm by certain classes of defendants. *Id*. Recognizing the presumption in favor of scienter, *id.* at 2195–96, the Court held that—because the statutory *mens rea* requirements in those provisions apply to each element of the crimes—the government is required to prove that the defendant had knowledge of each fact that made his conduct criminal, *i.e.*, that he was a "felon" and that he possessed the firearm. *Id.* at 2200.

Years later, when applying *Rehaif* in *Heyward v. United States*, the Fourth Circuit reviewed a challenge to a defendant's guilty plea to "knowingly possessing a firearm after being convicted of a crime punishable by imprisonment for a term exceeding one year." 42 F.4th at 464. Before entering that plea, however, the defendant was not advised of the government's burden to show that he knew his state conviction triggered the prohibition since (notwithstanding the "misdemeanor" label and the length of his sentence) he could have been incarcerated for more than one year. *Id.* at 464. In a straightforward application of *Rehaif*, the appellate court vacated the plea, holding that, considering defendant's repeated insistence that he was not aware that his conviction qualified him as a "felon," there was a reasonable likelihood that the defendant would not have entered the plea had he known the full scope of the government's burden. *Id.* at 467–71.

With that understanding of Defendant's proffered cases, it becomes clear that neither stands for the proposition that a defendant's ignorance of the *law* is a defense to all firearm-possession crimes. *Cf. Moody*, 2 F.4th at 198 (citing *Rehaif*, 139 S.Ct. at 2198 (holding that ignorance of or

mistakes about the legal consequences of one's actions is not a defense to a criminal charge)). Instead, those cases stand for propositions that do not support Speed's argument: first, that the statutes at issue there required knowledge of a fact (that is, that the defendant has a prohibited status); and second, that evidence showing that the defendant lacked such knowledge undermines their culpability (and would be relevant at trial). Indeed, neither of those decisions altered *Staples* or any other aspects of the evidentiary burden needed to be carried to sustain a conviction under § 5861(d).

Thus—consistent with *Staples* (as well as *Rehaif* and *Heyward*)—the government was required to show only that (1) Speed possess a "silencer" and (2) he "knew of the features of his [device]" that qualified it as such. *Cf. Staples*, 511 U.S. 619. For that reason, to be admissible, any evidence presented in Speed's defense would have had to refute one or both of those showings. Fed. R. Evid. 402.

### B.  Relevance of the Excluded Statement

The excluded statement was irrelevant to Speed's defense. Defense Exhibit 2 reflects only Speed's belief that the device "was not a silencer" (*i.e.*, the statute's registration requirement was not triggered) until he "drilled" it. But, as explained above, statements that go to Speed's knowledge of what § 921 says, when it is triggered, or what specific devices fall within its scope go to his (mis)understanding of the *law*. Defendant, however, fails to explain how those statements are at all probative of whether he had knowledge of the relevant *facts*, *i.e.*, the features and characteristics of the HIT devices that made them "device[s] for silencing, muffling, or diminishing the report of a portable firearm." *Cf.* 18 U.S.C. § 921(25); *see also Jamison*, 635 F.3d at 968 ("[A] conviction requires proving that [defendant] knew of the characteristics that subjected

10

the firearm to the registration requirement . . . not that he had knowledge of the statute at issue or its specific prohibitions").

*First*, Defendant's belief that the devices did not meet the statutory definition of "silencers" does not change that they did. Whether a device is a silencer is a fact question for the jury. *See United States v. Buchanan*, 787 F.2d 477, 483 (10th Cir. 1986) ("Whether the nature of a particular device is such that it must be registered is an ultimate fact question."). There are two available avenues of proving that fact: the government can show that either the device was sold with the purpose of "silencing, muffling, or diminishing the report of a portable firearm," (*i.e.*, it was actually a silencer) or that it was a "combination of parts, designed or redesigned, and intended for use in assembling of fabricating a firearm silencer" (*i.e.*, it was effectively a silencer). 18 U.S.C. § 921(a)(25). For that reason, to challenge this element of the crime, the Defendant would have needed to assert that the device did not possess the characteristics of a silencer. In fairness, he tried. But, in the eyes of the jury, that evidence was presumably outweighed by the other evidence showing how similar the HIT devices were to the designs of patented silencers, or how the manufacturer designed the devices to be used as such, or how the devices performed poorly as solvent traps. *See, e.g.*, Dkt. No. 145 at 39:19–20 ("[The HIT device] contains the same design features and characteristics [of silencer patent designs]."); *id.* at 70:25-71:2 ("The instructions [sheet]… doesn't actually tell you how to use it as a solvent trap."); *id.* at 43:8–10 ("So the reason for indexing the center of the front end[-]cap is to show the point for drilling the hole in the front end[-]cap."); *id.* at 68:17–19 ("So the baffles not only serve no purpose to a solvent trap or filter, but they're contrary to that.").

However, the Court need not divine the jurors' thoughts. It is enough to note that, as a matter of law, at no point in the jury's deliberation would the Defendant's state of mind as to the legality of his possession have become relevant.

*Second*, Defendant's belief that the devices did not meet the statutory definition of silencers does not speak to whether he was aware of the device's features. Again, the government was required to show that the Defendant was aware of the features that qualified his device as a silencer. Had the Defendant sought to proffer evidence that he was not, such evidence would have been highly relevant (and therefore admissible at trial). Speed's statement, however, is no such evidence. It does not suggest that the Defendant believed that the devices were regular solvent traps, or that he was not aware that the devices were one step away from being fully functioning silencers, or that the final step could be easily performed in a matter of minutes. Quite the contrary.

\*       \*       \*

Because the proffered statement does not make either of the two facts of consequence at issue here less probable, it lacked evidentiary relevance to Speed's defense. And because only relevant evidence may be admitted, the Court finds that there is no reason to vacate the verdict and that a new trial is not warranted. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for a New Trial (Dkt. No. 146) is **DENIED**.

/s/
Michael S. Nachmanoff
United States District Judge

May 30, 2023
Alexandria, Virginia